IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STRUCTURAL IRON WORKERS )
LOCAL UNION NO. 1 PENSION )
TRUST FUND, and JOHN GARDINER, )
Administrator of the Fund Disbursement )
Office, )
)
              Plaintiffs, )
)
    v. )  No. 12 C 140
)
OWS ENT., INC., an Illinois )
corporation, )
)
             Defendant. )

## OPINION AND ORDER

Plaintiffs Structural Iron Workers Local Union No. 1 Pension Trust Fund (the "Fund") and John Gardiner ("Gardiner"), administrator of the Fund, brought this action against defendant OWS Ent., Inc. ("OWS"), an Illinois corporation, for breach of contract to recover unpaid welfare contributions, liquidated damages, interest, attorney fees, audit fees, and costs allegedly owed pursuant to the terms of a collective bargaining agreement ("CBA"). This action arises under § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132,

and § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. The court has jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

The case is now before the court on cross-motions for summary judgment. The issue is whether welfare contributions are owed for the brother of the owner of defendant for hours which exceed his actual hours of work. Contributions were paid for his actual hours of work. A provision in the CBA requires payment for a fixed minimum number of hours for any hired individual who "substantially controls or has the power to substantially control" OWS. The parties contend that the essential facts are not in dispute.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 n.1 (2009); *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010); *Stokes v. Bd. of Educ. of City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to

establish any essential element for which he or it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Celotex*, 477 U.S. at 324; *Freundt v. Allied Tube & Conduit Corp.*, 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007); *O'Brien v. Encotech Constr.*, 2004 WL 609798 *1 (N.D. Ill. March 23, 2004). Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 594-95 (7th Cir. 2007); *Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago*, 357 F.3d 677, 679 (7th Cir. 2004); *Lampley v. Mitcheff*, 2010 WL 4362826 *6 (N.D. Ind. Oct. 27, 2010). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district

> court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" *Logan*, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." *Id.* (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" *Logan*, 96 F.3d at 978 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

*Outlaw*, 259 F.3d at 837.

The CBA obligates OWS to make monthly reports of hours worked by covered employees and to pay contributions to the Trust Funds for each hour

worked pursuant to the terms and rates established. ERISA and the CBA provide that employers who fail to submit contributions are responsible for the payment of such amounts together with liquidated damages in an amount of up to 20% interest at the prime rate plus 2%, reasonable attorney fees, and costs.

Section 12(B) of the CBA states in part:

> The Employer recognizes that each Board of Trustees has the sole power to construe the provisions of the respective Trust Agreements, the respective employee benefit plans, and each Fund's rules and regulations, if any, and that all constructions, interpretations, and determinations made by the respective Trustees for their respective funds shall be final and binding on all parties.

Appendix I(B) of the CBA, entitled "Certain Rules Relating to Employer Contributions," provides:

> Any covered Employer who hires an individual who substantially controls or has the power to substantially control the Employer, whether by stock ownership, relationship, marriage or otherwise, shall contribute to the Funds on behalf of said individual for each and every hour worked or paid, but in no case less than a minimum of 1,952 hours on an annual basis, at the current Local No. 1 Collective Bargaining Rate.

OWS is engaged in the structural steel business. The corporation is owned by Steve Ornoff. Gary Ornoff, the brother of Steve Ornoff, is hired as a

foreman. He has no financial interest in the corporation and has never held any corporate position. Gary Ornoff has no OWS bank account or other business authority. There are no administrative employees. Steve Ornoff obtains the work and informs Gary what is to be done at the job sites. Gary is not involved in bidding for or soliciting work. His activity is foreman at the job sites.

Depending on the work available, OWS employs five or six iron workers. Gary Ornoff has worked as an employee of OWS since 1994, after previously working as an iron worker in Oklahoma. He started with OWS as a journeyman and later became job foreman.

Steve Ornoff visits the work sites and instructs Gary Ornoff. Gary assigns iron workers to specific tasks. Steve and Gary discuss how the field work should proceed. When Steve Ornoff is not present, Gary is in charge of the job.

Gary Ornoff testified that the company has only a few long-time workers. He does not evaluate their work and has had no occasion to discipline any employee.

The wage scale for a Union foreman is $42.75 an hour. Gary Ornoff is paid $46.00 as foreman for OWS. His compensation and hours of work depend on the steel work jobs of OWS. In 2009, he worked 844 hours less than the 1,952

minimum. In 2010, the minimum was temporarily reduced to 1,864. Gary worked 651 hours less than the minimum. In 2011, his hours were 538 less than the 1,952 minimum.

In 2009, the Fund filed a suit in this court entitled *Structural Iron Workers Local Union No. 1 Pension Trust Fund v. Ornoff's Welding Serv., Inc.*, No. 09 C 2332 (N.D. Ill.). OWS is a named defendant in the case. In that case, it was alleged that OWS failed to make required fringe benefit contributions. The action was based on a Fund audit for the period from February 1, 2005 through December 31, 2008. OWS was allegedly liable in the total amount of $34,641.41. That case was settled with OWS agreeing to certain payments. The recitals provide, in part, as follows:

> WHEREAS, Ornoff has requested that the Trust Funds reconsider the determinations made in the audit concerning the "1952 Rule" to Gary Ornoff and whether fringe benefits must be paid for payment of shop-medical wages to covered employees who are not performing covered work;
>
> WHEREAS, the Trust Funds agree that, during the audit period of February 1, 2005 through December 31, 2008, the 1952 Rule was not applicable to Gary Ornoff, based on the facts and circumstances demonstrated by Ornoff concerning Gary Ornoff's inability to substantially control [OWS];

Plaintiffs state that the settlement agreement is not binding in this case and also call attention to waiver language in the agreement which is as follows:

> Under the terms of this Agreement, the Trust Funds conditionally waive their right to certain contributions, liquidated damages, and interest related to payments by [OWS] to its employees for Shop-Medical hours. The Funds's waiver is only in connection with this Agreement and is not intended to create any precedent or pattern of conduct with regards to other such payments made by [OWS] or any other employer in the future.

There is no showing that Gary Ornoff's position or duties with OWS have changed since the 2005-08 audit was conducted.

In his affidavit, plaintiff John Gardiner states that, because Gary Ornoff works for his brother, the payments sought are required. Gardiner states that the Fund interprets the Rule to require contributions "on behalf of an employee who is a family member." Pl. Exh. 7, ¶ 26. *See also* Def. Exh. 5 at 12-13, 22-23 (Satalic Deposition).

As a general rule, parties to a labor contract are bound by the plain and ordinary meaning of the terms in their agreement. *See Ill. Conference of Teamsters & Emp'rs Welfare Fund v. Mrowicki*, 44 F.3d 451, 458 (7th Cir.

1994); *Ossey v. ABT Elec., Inc.*, 1999 WL 202911 *8 (N.D. Ill. March 31, 1999); *Laborers' Pension Fund v. Morack Refractory Constr., Inc.*, 1993 WL 181752 *4 (N.D. Ill. May 26, 1993). Plaintiffs argue that the application of the CBA requires contract interpretation and that the defendant has agreed to be bound by the Fund's interpretation of the 1,952 rule. However, there is no need for an interpretation or construction of the contract terms. The question is rather whether the facts show that Gary Ornoff did substantially control, or had the power to substantially control, OWS. A family relationship with the owner of the corporation is certainly a fact to be considered, but it is not enough, by itself, to show power or substantial control. All of the proven activity of Gary Ornoff indicates that he was performing, and compensated for, duties typical of an iron worker field foreman--not the activities of an individual with power to substantially control the defendant corporation.

Plaintiffs are not legally bound by their settlement of the 2009 litigation, but their decision to renew the same dispute without any change of facts indicates that their earlier fact determinations and settlement recitals were correct and supports the decision reached in this case. Defendant is entitled to summary judgment.

IT IS THEREFORE ORDERED that plaintiffs' motion for summary judgment [27] is denied and defendant's motion for summary judgment [34] is granted. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiffs dismissing plaintiffs' cause of action with prejudice.

ENTER:

*[signature]*
UNITED STATES DISTRICT JUDGE

DATED: MAY 14, 2013